# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **LISA ANN MOORE,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner, Social Security** )<br>**Administration,** )<br>)<br>**Defendant.** )  | Civil Action Number<br>6:15-cv-00363-AKK |

## MEMORANDUM OPINION

Lisa Ann Moore brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 205(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I.    Procedural History

Moore filed her application for Title II Disability Insurance Benefits on September 14, 2012, alleging an onset date of June 15, 2011 due to arthritis, chronic obstructive pulmonary disease ("COPD"), and anxiety. (R. 131-44, 164,

200). After the SSA denied her application, Moore requested a hearing before an ALJ. (R. 83, 86-87). At the time of the hearing on August 8, 2013, Moore was 46 years old; had earned a general equivalency diploma; and had past relevant work experience as a poultry eviscerator, cushion maker, automatic hemmer, and manufactured home cleaner. (R. 41-43, 165, 184). Moore had not engaged in substantial gainful activity since June 15, 2011. (R. 14, 164).

The ALJ subsequently denied Moore's claim on September 25, 2013, (R. 9-11, 24), which became the final decision of the Commissioner on January 9, 2015 when the Appeals Council refused to grant review, (R. 1-3). Moore then filed this action pursuant to § 205(g) on February 27, 2015. Doc. 1.

## II.    Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A).  A physical or

mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*.  See 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012. Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

### IV.   The ALJ's Decision

In performing the five-step analysis, the ALJ found that Moore had not engaged in substantial gainful activity since June 15, 2011 and therefore met Step One. (R. 14). Next, the ALJ found that Moore satisfied Step Two because she suffered from the severe impairments of "degenerative disc disease of the lumbar spine and . . . []COPD[] secondary to continuing tobacco abuse." (R. 14). The ALJ then proceeded to the next step and found that Moore did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 15-16). Although the ALJ answered Step Three in the negative, consistent with the law,

*see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where he determined that Moore:

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with a sit/stand option for one to two minutes every hour or so. She can perform posturals such as stooping, crouching, crawling, kneeling and bending occasionally. She can never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to dust, fumes, gases and poor ventilation. She should avoid dangerous machinery and unprotected heights.

(R. 16). In light of Moore's RFC, the ALJ determined that Moore "is unable to perform any of her past relevant work" as a poultry eviscerator, cushion maker, auto hemmer, or manufacturing home cleaner. (R. 23). Lastly, in Step Five, the ALJ considered Moore's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Moore] can perform." *Id.* Therefore, the ALJ found that Moore "has not been under a disability, as defined in the Social Security Act, from June 15, 2011." (R. 24).

## V.   Analysis

Moore asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: (1) failed to appropriately consider the opinion of Dr. John Bovina, Moore's treating physician; (2) inappropriately weighted the opinions of Dr. Jonathan Ledet and Dr. James Lindsey; (3) erred in discrediting

Moore's subjective testimony; and (4) improperly questioned the vocational expert ("VE") at Moore's hearing. *See* doc. 10 at 18-42. None of these contentions, however, establish that the ALJ committed reversible error.

> *1. The ALJ did not err by affording Dr. Bovina's opinions and conclusions limited weight.*

Relying on Eleventh Circuit law that an ALJ must give "substantial or considerable weight" to the medical opinion of a treating physician unless "good cause" is shown,[2] *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004), Moore argues that the ALJ erred by affording the medical conclusions and opinions of Dr. Bovina, her treating physician, limited weight. *See* doc. 10 at 18-31. To support her contentions, first, Moore disputes the ALJ's finding that the evidence supports a finding contrary to Dr. Bovina's opinion and that Dr. Bovina's opinion was not bolstered by the evidence. Moore is correct generally that Dr. Bovina stated in his July 2013 opinion that Moore should sit continuously for only 2 hours a day, stand or walk for only 1-2 hours a day, and rest for 2-3 hours per day, (R. 352), that Moore is "confounded by depression," (R. 347), and that Moore "will always have a level of chronic pain that limits her daily activity," *id*. However, as the ALJ pointed out, Dr. Bovina offered no objective clinical data to

---

[2] "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Moreover, "[w]hen electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [her] reasons." *Id.*

support his opinion testimony. (R. 22). Indeed, a review of Dr. Bovina's opinion testimony and his functional capacity assessment reveals that, but for discussion of a 2006 magnetic resonance imaging ("MRI") record, he does not specifically reference any objective evidence in his discussion of Moore's medical limitations. (R. 339-47, 351-52). Under Eleventh Circuit law, "[t]he opinion of a 'treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight,'" as in this case, where Dr. Bovina testified generally that Moore's pain level of six out of ten was "reasonably expected" given the "[medical] history [Moore had] given to [Dr. Bovina]." *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (quoting *Bloodsworth*, 703 F.2d 1233 at 1240); (R. 346).

The ALJ also noted that Dr. Bovina's findings were inconsistent with the objective medical evidence. (R. 22). Images of Moore's chest were "clear" (although the radiologist did note that the images "rais[ed] the question of chronic airway changes and possible early infiltrate"), (R. 236), and the 2006 MRI referenced above returned only "[m]ild" and "[m]inimal" findings of disc degenerative disease, (R. 326, 327). Additionally, objective medical tests conducted by other physicians have similarly indicated that Dr. Bovina's opinion testimony was exaggerated; in fact, tests revealed that Moore had "no decreased range of motion," could "squat and rise from a squatted position . . . with no

difficulty," had "[l]ungs clear to auscultation bilaterally," and could "[m]ove[] all extremities well," as well as other, similar results. (R. 237, 244, 248, 252, 256, 321). Because Dr. Bovina failed to specifically identify objective medical evidence that supports his testimony—and because the objective medical evidence in the record contradicts his opinion regarding the alleged severity of Moore's impairments—the ALJ's decision to grant "little deference" to Dr. Bovina's opinion is supported by substantial evidence.

Second, Moore contests the ALJ's finding that Dr. Bovina's July 2013 opinions and conclusions were inconsistent with Dr. Bovina's own medical records. Although Dr. Bovina's opinion asserts significant limitations on Moore's ability to sit, stand, and walk, (R. 344-47), his treatment notes variously indicate that Moore's lungs were "clear," (R. 260, 263, 267, 270, 273, 310, 334); that she had "[n]o CVA [costovertebral angle] tenderness," (R. 260, 267, 270); and that she had reported "decreased pain and an increase in function," (R. 268, 271, 274, 311, 335), among other, similar statements. Because Dr. Bovina's treatment notes contradict his allegations of Moore's functional limitations, substantial evidence supports the ALJ's decision to give Dr. Bovina's opinion little deference.

In light of the fact that the ALJ's decision to discredit Dr. Bovina's functional opinion is supported by substantial evidence—and because the ALJ properly articulated that she discredited Dr. Bovina's opinion because it "failed to

provide objective clinical data or other objective information to support his opinion" and was "contradicted by not only his own treatment records, but by those of the [other doctors] and objective medical testing," (R. 22)—Moore cannot find relief on this ground.

> 2. *The ALJ acted within her discretion by granting Dr. Lindsey and Dr. Ledet's findings "substantial weight."*

Moore also objects to the ALJ's decision to afford "substantial weight" to the opinions of consulting examiners Dr. Lindsey and Dr. Ledet when she only gave Dr. Bovina, Moore's treating physician, little weight.[3] Doc. 10 at 29-31; *see* (R. 21). Although an examining physician's opinion is generally entitled to less weight than a treating physician's opinion, *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984), an ALJ may privilege non-treating physicians' opinions over a treating physician's opinion when the ALJ has good cause to disregard the treating physician's opinion and when the non-treating physicians' opinions are consistent with other evidence in the record, *Fries v. Comm'r of Social Sec.*, 196 Fed. App'x 827, 833 (11th Cir. 2006); *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). The substantial evidence supports the ALJ's decision here. First, for the reasons discussed above, the ALJ's determination that Dr. Bovina's

---

[3] Moore also objects to the ALJ's determination that Dr. Renee Philipot Bowen's opinion received "little weight" in the ALJ's disability determination. Doc. 10 at 29-31. However, Dr. Bowen is a chiropractor. (R. 354). As such, she "is not considered an 'acceptable source' and, thus, [her] opinion cannot establish the existence of an impairment." *Crawford v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (referencing 20 C.F.R. §§ 404.1513(a), 416.913(a)). Moreover, Dr. Bowen's findings do not advance Moore's argument, because even though she found that Moore's lumbar motion was "limited," she noted only "mild degenerative changes" in her neck and spine. (R. 354). Accordingly, this argument cannot succeed.

opinion deserved little weight was appropriately within her discretion. Second, Dr. Lindsey's and Dr. Ledet's opinions "were based upon an examination of the claimant and [were] consistent with other medical evidence of record." *See* (R. 21).

Dr. Lindsey, a psychologist who examined Moore to evaluate her mental health, found that, although Moore has had "suicidal ideations," (R. 296), and demonstrates "[major] [d]epressive [d]isorder" and "[p]anic [d]isorder [w]ithout [a]goraphobia," (R. 299), these diagnoses suggested only a "mild impairment" to her employability, *id.* Dr. Lindsey encouraged Moore to seek counseling, as he found that her "mental health condition could improve . . . if she was able to secure outpatient counseling." (R. 299). These findings align with the remainder of Moore's file, because although Moore and her sister allege that Moore has symptoms of depression and panic attacks when in large crowds, (R. 177, 197-98, 318), her medical records do not reflect that mental health issues impair her daily function. In fact, nowhere in Dr. Bovina's treatment records—from August 2011 until May 2013—did he diagnose anxiety or depression,[4] (R. 259-74); only in February 2013, more than a year and a half after Moore's alleged onset date, did a nurse practitioner diagnose Moore as "positive for [a]nxiety," (R. 331). Moreover, Dr. Bovina's psychological assessments indicated that Moore was "[a]lert and oriented . . . [with m]ood and affect appropriate." (R. 260, 274, 334). Additionally,

---

[4] The medical records do not reflect a diagnosis of anxiety or depression, although they reflect, however, that at this time Dr. Bovina was prescribing Moore Ativan for anxiety. (R. 261, 264, 267, 270, 274.)

the medical record does not reflect that Moore asserted any limitations on her daily activities as a result of poor mental health. (R. 259-274, 333-36). As such, substantial evidence supports the ALJ's determination to give substantial weight to Dr. Lindsey's determination that Moore was only mildly impaired by her mental health symptoms.

Similarly, Dr. Ledet, who examined Moore's physical ailments, found that Moore had "no limitation[s]" on her spine and shoulders. (R. 322). In fact, Dr. Ledet's opinion included the following findings: "[a]mbulation [is] normal," "[g]ait is normal," and "[Moore has f]ull range of motion of all joints tested . . . including lumbar and cervical spine." (R. 321-22). These findings align with the aforementioned objective medical imaging and medical records reflecting Moore's visits to Dr. Bovina, both of which reflected mild limitations—at most—on Moore's ability to function. Furthermore, Moore's descriptions of her daily activities similarly align with Dr. Ledet's findings, as she noted that she only requires five minutes to prepare simple meals; she can do dishes, laundry, and sweeping; and she can walk 100 yards before needing to rest. (R. 194-97). Because Dr. Ledet's opinions are supported by the remaining information in the record, the ALJ did not err in affording his opinion "substantial weight."

Because Dr. Lindsey's and Dr. Ledet's opinions correspond with the rest of the record—and because the ALJ appropriately demonstrated good cause to afford

Dr. Bovina's opinion "little weight"—the ALJ's determination that Dr. Lindsey and Dr. Ledet should receive "substantial weight" is within her discretion. Therefore, Moore cannot find relief on this ground.

> 3. *The ALJ acted within her discretion when determining that Moore's assertions of pain were "not entirely credible."*

Moore also argues that the ALJ erred by finding "not entirely credible" her statements concerning the intensity, persistence, and limiting effects of her symptoms. *See* doc. 10 at 32-40; (R. 17). At issue here is the ALJ's finding that although Moore's medically determinable symptoms "could reasonably be expected to cause [her] alleged symptoms," the alleged "intensity, persistence and limiting effects of those symptoms" were not entirely credible. (R. 17). Based on the record, the court agrees.

When faced with a claimant who shows that a "medically determinable impairment . . . could reasonably be expected to produce [the alleged] symptoms," the ALJ must evaluate the "intensity and persistence" of the alleged symptoms to determine if they limit the claimant's capacity for work.[5] 20 C.F.R. §§404.1529(b)-(c). Factors to consider include: the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and

---

[5] The ALJ here did not explicitly apply the *Hand* standard that the Eleventh Circuit outlines for pain; however, the ALJ's analysis makes clear that she appropriately relied upon the standard in making her credibility determination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) ("Although the ALJ d[id] not cite or refer to the language of the three-part test . . . his findings and discussion indicate that the standard was applied. Furthermore, the ALJ cites to 20 C.F.R. § 404.1529, which contains the same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard.").

aggravating factors; measures the claimant has taken to relieve pain; treatment, other than medicine, that the claimant has received to alleviate her symptoms; and other factors concerning functional limitations. *Id.* If an ALJ rejects a claimant's pain testimony, she must articulate reasons for that decision; otherwise, as a matter of law, the claimant's testimony is accepted as true. *Hale*, 831 F.2d at 1012.

The ALJ extensively outlined her reasons for discrediting Moore's subjective pain and mental health symptoms.[6] For example, as discussed at length above, the objective medical evidence does not support a finding of disabling impairment. The above discussion also indicates that Moore's daily activities do not necessitate a finding of disabling impairment. Moreover, when evaluating her compliance with treatment, the ALJ noted that Moore continues to smoke despite repeated medical advice to the contrary and despite the fact that she alleges disability based on her COPD condition.[7] (R. 19-20, 244, 246, 248, 250, 255, 263, 266-67, 269-70, 273, 297, 310, 320, 330, 333-34). The ALJ also appropriately

---

[6] Moore also alleges that the ALJ failed to appropriately consider the combined effect of her alleged impairments when determining Moore's pain and overall condition. Doc. 10 at 38. However, the ALJ explicitly stated that Moore "d[id] not have an impairment or combination of impairments" to substantiate a finding of disability, thus satisfying the required showing. (R. 15); *see Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (holding that the ALJ's finding that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one [in the listings]" is sufficient to show that the ALJ had considered the impairments in combination). The court is accordingly unconvinced by Moore's argument.

[7] In her opinion, the ALJ focused on the fact that Moore had not reduced her cigarette consumption and instead still smoked "half a pack of cigarettes a day," and that "it does not appear [Moore] has made any effort to quit." (R. 20). However, the record actually reflects that Moore has decreased her cigarette intake from a one-and-a-half packs per day in 2010, (R. 226), to one-half pack per day in 2013, (R. 34, 297). While this does constitute a decrease in cigarette consumption, the ALJ's error here is harmless, as Moore is still heavily smoking notwithstanding her COPD condition. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (holding that when an ALJ commits an error and, even if the error were corrected it "would not contradict the ALJ's ultimate findings, the ALJ's decision will stand").

considered Dr. Bovina's "conservative treatment" for Moore's alleged impairments as another factor discrediting the alleged severity of Moore's impairments. (R. 19, 21); *see Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (discrediting allegations of pain because, among other reasons, the "course of treatment for his [ailments] were entirely conservative in nature") (quotations omitted); *see also* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Indeed, the record does not reflect that Dr. Bovina recommended any treatment other than medication (beyond advising Moore to cease smoking); he never recommended physical therapy, steroid injections, surgery, or mental health counseling. *See* (R. 19, 259-78, 333-36).

Based on this record, the ALJ's decision to deem Moore's pain severity "not entirely credible" is supported by substantial evidence. Therefore, the court denies this ground for relief.

> 4. *The ALJ did not commit reversible error by failing to ask the VE a hypothetical question that incorporated all of Moore's alleged symptoms.*

Moore also objects to ALJ's hypothetical questions posed to the VE. Doc. 10 at 41. Specifically, Moore argues that because the ALJ did not ask the VE a hypothetical question that included all of Moore's alleged symptoms—in particular, that Moore "ha[d] to lie down for several hours a day"—the ALJ's disability determination should be overturned. *Id.* The court finds otherwise,

mainly because Moore's attorney asked the VE a question that did incorporate this alleged symptom into her hypothetical, (R. 45), so any error by the ALJ was harmless, and because the Eleventh Circuit has held that "[an] ALJ [is] not required to include findings in the hypothetical that [she] had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. As discussed above, the ALJ's decision to discount Moore's allegations of her pain symptoms was supported by substantial evidence; therefore, her decision not to incorporate that alleged symptom into her hypothetical was supported by substantial evidence.

In light of the fact that the ALJ did not commit reversible error in neglecting to question the VE about the availability of jobs that would allow Moore to rest for several hours a day, Moore may not find relief on this ground.

## Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Moore is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this determination. Therefore, the commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 4th day of November, 2015.

```
                    _____
                           ABDUL K. KALLON
                    UNITED STATES DISTRICT JUDGE
```